UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
 ----------------------------------------------------------------------X

LEE MENDELSON FILM PRODUCTIONS, INC.,

                 Plaintiff,

    - against-

MADCOW, LLC D/B/A GAMEMILL
ENTERTAINMENT; JOHN DOES 1-10;

                 Defendant.

 ----------------------------------------------------------------------X

Index No. 26-cv-4192

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Lee Mendelson Film Productions, Inc. ("LMFP" or "Plaintiff"), by and through

its undersigned attorneys, hereby files this Complaint against Defendant Madcow, LLC d/b/a

GameMill Entertainment ("GameMill") and Does 1-10 (together, "Defendants"), and alleges as

follows:

## NATURE OF THIS ACTION

1.      This is an action for copyright infringement.

2.      Plaintiff owns certain intellectual property associated with the world-famous

*Peanuts* animated television productions, film productions, and music catalog, including the

copyright in the musical compositions "Linus and Lucy" and "Skating" (the "Guaraldi

Compositions"). Each of the Guaraldi Compositions is an iconic theme, associated with a

beloved children's series, a beloved television Christmas classic special, one of the most iconic

Christmas and jazz albums of all time, and is widely familiar to the American public as one of

the most popular works of television music of all time.

3.      As the owner and steward of this musical and entertainment legacy, Plaintiff

licenses the Guaraldi Compositions to those who wish to use them for authorized purposes.

However, Defendants never sought Plaintiff's permission - even though there can be little doubt

that music of this nature and stature requires a license for use - but instead created music substantially similar to (and thus infringing upon) the Guaraldi Compositions without authorization, as the soundtrack for a *Peanuts* video game.

4.      LMFP is a television and film production company and music publisher in Burlingame, California founded by Lee Mendelson. LMFP has been operating since 1963. It is best known for *Peanuts* animated television and film productions including *A Boy Named Charlie Brown* and *Snoopy, Come Home*, as well as several documentaries on Charles Schulz and his *Peanuts* characters. Additionally, it produced *A Charlie Brown Christmas*, *It's the Great Pumpkin, Charlie Brown*, and *A Charlie Brown Thanksgiving*, along with over 50 other prime-time and other *Peanuts* classic specials, the classic Garfield specials, and scores of other entertainment and documentary productions. Its founder, Lee Mendelson, is the executive producer of the many *Peanuts* animated specials.

5.      LMFP had a 38-year relationship with Charles Schulz until his passing in 2000. Schulz was the beloved American cartoonist and creator of the comic strip *Peanuts*, which features the characters Charlie Brown and Snoopy, among others.

6.      LMFP produced 12 prime time *Garfield* specials and a 121-program series *Garfield and Friends*.

7.      LMFP created over thirty prime time network specials, featuring stars such as Paul Newman, Gene Kelly, Lucille Ball, Bing Crosby, Flip Wilson, Whoopi Goldberg, Willie Mays and Henry Fonda, among others.

8.      LMFP won numerous Emmy awards and its productions achieved additional Emmy, Grammy and Oscar nominations.

9.      LMFP is the music publisher of the Vince Guaraldi Library of Charlie Brown

music (along with other music). This music, which includes the Guaraldi Compositions, is famously associated with *Peanuts* and also stands on its own as an enduringly popular and recognizable musical part of American culture.

10.    Plaintiff brings this action pursuant to the Copyright Act of 1976, 17 USC § 101 *et seq.* as a result of Defendants' infringement and to protect the valuable copyright in the Guaraldi Compositions and the history and goodwill it represents.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a), as this matter involves, *inter alia*, violation of federally-registered copyrights.  Plaintiffs seek a declaratory judgment under the Declaratory Judgment Act pursuant to 28 U.S.C. § 2201.

12.    Venue in this district is proper as to Defendants pursuant to 28 U.S.C. § 1391(b)(1), (2) and (3), and New York Civ. Prac. L. & R. §§ 301 and 302(a)(3)(i) and (ii), because Defendants (a) regularly do and solicit business, and engage in a persistent course of conduct, and derive substantial revenue from goods used or consumed or services rendered, in the state of New York, (b) because Defendants expect or should reasonably expect their services to have consequences in the state of New York, and (c) because Defendants derive substantial revenue from interstate and international commerce.

## THE PARTIES

13.    Plaintiff Lee Mendelson Film Productions, Inc. is a California corporation located at 330 Primrose Road, Suite 215, Burlingame, California 94010.  Plaintiff owns and administers the copyrights to music associated with the iconic *Peanuts* characters.

14.    Defendant Madcow, LLC d/b/a GameMill Entertainment is a Delaware Limited Liability Company, located at 7900 West 78th Street Ste 310, Edina, MN 55439.

15.    Defendants Does 1-10 are people and/or entities who, upon information and

3

belief, were complicit in, aided and abetted, and/or benefitted from, the wrongful actions of the other Defendants, including but not limited to people and/or entities that composed, recorded, arranged, produced and otherwise brought about the creation of the copyright-infringing music at issue in this matter.

## FACTUAL SUMMARY

16.    Charles M. Schulz created *Peanuts* in 1950.

17.    *Peanuts* ran as a syndicated daily comic strip from 1950 to 2000, when Mr. Schulz died, the reruns of which continue to run today.

18.    Upon information and belief, at the time of Mr. Schulz's death, *Peanuts* was running in over 2,500 newspapers in 75 countries.

19.    The *Peanuts* characters have also appeared in over 50 prime time network television specials and five animated feature films.

20.    Lee Mendelson was the Executive Producer of the classic *Peanuts* Television and film productions from 1965 until his passing in 2019.

21.    Vince Guaraldi composed original music for the *Peanuts* television specials, which has become indelibly associated with the *Peanuts* characters and films from 1965 until his passing in 1976.

22.    Among the most iconic pieces of music composed by Mr. Guaraldi for the *Peanuts* films are "Linus and Lucy" and "Skating."

23.     Mr. Guaraldi composed "Linus and Lucy" in 1964, and "Skating" in 1965.

24.    Both "Linus and Lucy" and "Skating" were included in the film "A Charlie Brown Christmas" and its companion album.

25.    "Linus and Lucy" is often thought of and referred to as the *Peanuts*' "theme song," while "Skating" is another piece that is immediately associated with *Peanuts* and with

4

Christmas.

26.     *Peanuts*, the *Peanuts* television specials and films, and the music that appeared in those television specials and films, is widely known throughout the world, with the films currently available for streaming on Apple TV, and the music being listened to, streamed, and played around the world.

27.     Plaintiff is the assignee of each of the Guaraldi Compositions.

28.     Each of the Guaraldi Compositions has been registered with the United States Copyright Office (the "Registrations"), true and correct copies of which are attached hereto and incorporated herein as **<u>EXHIBIT A</u>**:

RE0000650749/EU0000879495 ("Linus and Lucy")

RE0000770106/EU0000124820 ("Skating")

29.     The *Peanuts* characters and imagery are not owned by Plaintiff, but rather by Peanuts Worldwide LLC (who is not a party to this case).

30.     In 2025, GameMill released the video game entitled "Snoopy & The Great Mystery Club" (the "GameMill Game") on all of the following video game platforms: PS5, Xbox X|S, Nintendo Switch, and PC.

31.     The GameMill Game retails for $39.99 for the Standard Edition, and $49.99 for the Deluxe Edition.

32.     Upon information and belief, the GameMill Game offers players, or could be modified by GameMill to offer players, the opportunity to make additional in-game purchases from within the GameMill Game.

33.     In the GameMill Game, players embody the character of Snoopy and make their way through a simulated environment in which they are tasked with investigating a mystery,

collecting clues and rewards, and engaging in various "mini-games," all to be able to advance through the GameMill Game.

34.     Along the way, the Snoopy character encounters and engages the other *Peanuts* characters, who then begin following Snoopy through the GameMill Game.

35.     Plaintiff has confirmed that GameMill licensed the rights to the *Peanuts* characters from Peanuts Worldwide LLC for use in the GameMill Game, but, as discussed herein, GameMill did not license the rights to the Guaraldi Compositions from Plaintiff.

36.     Upon information and belief, GameMill knew that Plaintiff owned the Guaraldi Compositions.

37.     Upon further information and belief, GameMill wanted the soundtrack to the GameMill Game to evoke the Guaraldi Compositions, specifically "Linus and Lucy" and "Skating."

38.     Upon further information and belief, and to that end, GameMill engaged one or more other persons to compose and record music for the GameMill Game that was very similar – but not identical – to the Guaraldi Compositions.

39.     Thus, at nearly all times that players engage with the GameMill Game, there is running audio accompaniment that sounds substantially similar to "Linus and Lucy" and "Skating."

40.     Indeed, upon information and belief, GameMill expected that most players of the GameMill Game would not even realize that they were hearing anything other than the Guaraldi Compositions, and perhaps even believe themselves to be hearing the actual *Peanuts* recordings as performed by Vince Guaraldi.

41.     Although the foregoing allegations must be made at this time upon information

6

and belief, that information and belief is based on substantial circumstantial evidence, the most significant being that the GameMill Game is, indeed, a *Peanuts* game.

42. GameMill self-evidently wanted the *Peanuts* imagery in the GameMill Game to be paired with the *Peanuts* music, but, equally self-evidently, did not want to pay Plaintiff for rights to use it.

**Infringement of the Guaraldi Compositions**

43. Plaintiff has engaged the services of musicologist Dr. Ethan Lustig to provide an initial analysis of the musicological similarities between the Guaraldi Compositions and the music in the GameMill Game.

44. Dr. Lustig's initial assessment (the "Assessment") is attached hereto as **EXHIBIT B** and incorporated herein in its entirety.

45. As set forth in the Assessment, working with a video 4 ½ hour "walkthrough" of the GameMill Game, Dr. Lustig identified 192 instances of 17 distinct musical cues, occupying 92.6% of the total time of the walkthrough.

46. Dr. Lustig then presents musicological analysis of each of the cues, concluding that there are strong musicological similarities between 15 of the 17 cues, on the one hand, and "Linus and Lucy" and/or "Skating," on the other, with the 15 cues occupying 89.6% of the total time of the walkthrough.

47. Presented below are select examples from the Assessment.

**"Linus and Lucy"**

48. "Linus and Lucy" – often thought of as the *Peanuts* "theme song" – was composed by Vince Guaraldi, in the key of Ab major, at a tempo of 163 BPM. Below is a transcription of the introduction and A section of the "Linus and Lucy" Composition:

7



49.    The main melodic theme of "Linus and Lucy" is C-D-E-E-D-C-D-C (1-2-3-3-2-1-2-1) in the right hand, while the left hand plays a repeating vamp consisting mostly of root-fifth-octave (C-G-C) and root-fifth-sixth (C-G-A).

50.    For the harmonies, "Linus and Lucy" employs open-fifth or "power" chords (due to the spare piano left-hand part), related by a chromatic third: C5 to Eb5 (for exactly two measures—as in mm. 11-12) and then back to C5.

**"Success" Cues**

8

51.     The two versions of the "Success" cue, which together occur 34 times in the 4 ½-hour walkthrough of the GameMill Game, are particularly significant, both in terms of the musicological similarities, and the importance of the "Success" cues to the GameMill Game.

52.     As Dr. Lustig explains, both the right hand and the left hand notes of the GameMill Game's "Success" cues are based on "Linus and Lucy," as reflected in the comparative annotations below:



53.     The melody of the "Success" cues is a fragment of the opening pitch series of the "Linus and Lucy" melody (1-2-3-3), while the left-hand part of the cue presents the first three pitches of the "Linus and Lucy" left hand part (with the fourth note of the cue transposed up an octave).

54.     The foregoing reflects a strong musicological similarity, and also a substantial similarity as a matter of Copyright law.

55.     Moreover, the "Success" cues are performed for the player only upon the player's completion of a particular task or challenge and are not played at any other time.

56.     Upon information and belief, GameMill designed the GameMill Game in this way specifically to set up a reward structure for the player, whereby the player is rewarded with the most iconic piece from the Guaraldi Compositions only upon successful completion of a task or challenge.

57.     In this way, the entire game is designed around working toward causing the GameMill Game to perform the "Success" musical cues, which infringe the Guaraldi Compositions, making them centrally important.

**"Town Theme" (38.0% of walkthrough)**

58.     The two variants of the "Town Theme" cue occupy 38% of the total runtime of the walkthrough of the GameMill Game.

59.     Dr. Lustig explains that the melody of "Town Theme" is a direct variation on the "Linus and Lucy" melody, with the following figure demonstrating the correspondences between the right hand of each piece ("Linus and Lucy" above, "Town Theme" below), with identical pitches boxed in red:



60.     The specific pattern in "Linus and Lucy" consists not just of 1-2-3 ascending followed immediately by 3-2-1 descending, but a more extensive pattern: 1-2-3-3-2-1-2-1, which is found note-for-note in "Town Theme", as for example in m. 12:



61. Furthermore, as melody is the result of pitch plus rhythm, it is notable that "Town Theme" also shares an extremely specific rhythmic (and metric) instantiation of the melody as well, as reflected in the notation below, which compares the right hands of "Linus and Lucy" (above) and 1:53 of "Town Theme" (below):



62. In the above figure, red boxes show identical note events (same pitch and rhythm), while red dashed lines show displaced note events (same pitch but slightly shifted rhythm). Red notes show identical pitches, in order.

63. As shown above, "Town Theme" at 1:53 uses the same pitch series as "Linus and Lucy", only with some notes appearing slightly earlier or later.

64. This series extends even beyond the aforementioned 1-2-3-3-2-1-2-1 to the even more specific series, 1-2-3-3-2-1-2-1-1-2-3-3.

65. Therefore, "Town Theme" at 1:53 (and, for example, at m. 12 as demonstrated above) is merely a slightly rhythmically recast performance of "Linus and Lucy", but both are the same fundamental composition.

66. As Dr. Lustig explains, in the above figure, even the black notes in "Town

11

Theme" (there are five of them) are simply motivic echoes of the main melody material, rather than anything distinct.

67.    Dr. Lustig points out that the compositional similarity between "Town Theme" and "Linus and Lucy" is even more noticeable once the left-hand is added into the equation.

68.    Below are annotations of the first four bars of the left-hand of "Linus and Lucy" (above) compared with the left-hand of "Town Theme" (below):



69.    As shown by the notes written in red, the "Town Theme" left-hand part presents the same fundamental left-hand accompaniment pattern as "Linus and Lucy", albeit with rhythmic displacements and embellishing notes.

70.    These and other similarities detailed in Dr. Lustig's Assessment reflect strong musicological similarities between "Town Theme" and "Linus and Lucy."

**"1610. Peanuts Summercamp Final Loop" (14.8% of walkthrough)**

71.    The first five notes of the "Summercamp" cue's right-hand melody are a direct fragment of the "Linus and Lucy" right-hand melody: 1-2-3-3-2-1, while the left-hand part of the cue presents direct fragments of the "Linus and Lucy" left-hand part.

72.    The following four figures compare "1610. Peanuts Summercamp Final Loop" with "Linus and Lucy". Red notes show pitch series that are identical to "Linus and Lucy", while red boxes show the specific pitch series' mappings between the two pieces:

12



73.    In the right-hand parts, "1610. Peanuts Summercamp Final Loop" presents the "Linus and Lucy" melody note-for-note (1-2-3-3-2-1) (first figure: first pair of red boxes), followed by an echo of the latter's 3-2-1 (first figure: second pair of red boxes). Note that the similarities are so extensive that a second right-hand figure is needed to show the further identical pitch series between the "Summercamp" cue and "Linus and Lucy".

74.    In the left-hand parts, "1610. Peanuts Summercamp Final Loop" presents C-G-C and C-G-A (red boxes in the third and fourth figure respectively), both of which are direct fragments of the "Linus and Lucy" left-hand part, and are presented in the same order as in that work. Both fragments are rhythmically similar to the "Linus and Lucy" left-hand, also—entering on the first three eighth notes of the bar.

13

75.    In both its left- and right-hand parts, "1610. Peanuts Summercamp Final Loop" continues these same themes throughout its duration. To give another example, consider 0:52 of the cue:



76.    In the right-hand parts, the exact same pitch series (1-2-3-3-2-1) is presented in the two pieces (first red box), in identical rhythm and metric placement, with the exception of the slightly displaced first note (shown by a red arrow). The blue boxes show identical rhythm and metric placement (albeit different pitches).

77.    In the left-hand parts, the C-G-C in "1610. Peanuts Summercamp Final Loop" is again shown to be a direct fragmental quotation of the "Linus and Lucy" left-hand part: not only occurring on the same pitches and in the same ascending manner, but also in the same rhythm

and metric placement.

**<u>"Schoolhouse Theme" (13.2% of walkthrough)</u>**:

78.    This cue presents significant similarities to <u>both</u> "Linus and Lucy" and "Skating."

79.    "Skating" was composed by Vince Guaraldi, in the key of C major, and at a tempo of 194 BPM, in a 3/4 time signature. Here are the first six measures of that Composition:



80.     "Schoolhouse Theme" presents multiple direct melodic interpolations of "Skating," for example at 1:08 of the right-hand part of the former (red noteheads show identical pitches):



81.    For the first 10 consecutive red noteheads, the two note-series are 100% identical in pitch, rhythm, and meter. The final three red noteheads (B-A-G) are identical in pitch (albeit different in rhythm).

82.    The overlap between "Schoolhouse Theme" and "Skating" is reflected further in the annotation below:



83.    Another extensive similarity is found at 0:03 of the "Schoolhouse Theme" right-hand part, whereby all 22 notes from "Schoolhouse Theme" here are simply interpolations of "Skating," with the pink noteheads showing a string of 14 consecutive identical pitches, of which 10 are also identical in rhythm (eighth notes) albeit shifted over by half a beat, and the red noteheads showing string of eight consecutive identical pitches, of which all eight are also in identical rhythm (eighth notes) albeit shifted over one beat.



84.    The final four notes of the above "Schoolhouse Theme" excerpt are a rhythmic augmentation of the corresponding notes from "Skating."

85.    "Schoolhouse Theme" also presents strong musicological similarities to "Linus and Lucy," as reflected below in this excerpt from 0:38 of the "Schoolhouse Theme," which presents the same ordered pitch series as found in "Linus and Lucy":



86.    Similarly, at 1:21 of the "Schoolhouse Theme" there is a direct, uninterrupted series of nine consecutive ordered pitches that are identical to "Linus and Lucy":



## AS AND FOR A FIRST CAUSE OF ACTION
### (Copyright Infringement)

87.    Plaintiff repeats, realleges and incorporates herein by reference each and every allegation contained above as though the same were set forth herein.

88.    Plaintiff is the owner of each of the Guaraldi Compositions.

89.    Plaintiff holds federal copyright registrations for each of the Guaraldi Compositions.

90.    Defendants, or people acting at the direction or under the control of Defendants, had access to the Guaraldi Compositions, *inter alia*, because of the longstanding dissemination and fame of the *Peanuts* music throughout the world for more than 60 years.

91.    In addition, GameMill conceded that it had access to the Guaraldi Compositions when – on December 19, 2025 – Andy Koehler, Head of Publishing for GameMill, wrote that "the creator of the music focused on honoring the recognizable atmosphere and instrumentation

style associated with the [*Peanuts*] brand."

92.     It is incontrovertible, in fact, that Defendants were well aware of the Guaraldi Compositions and purposefully created music that was musicologically similar to the Compositions precisely because of the longstanding association in the mind of the public between those Compositions and the *Peanuts* characters.

93.     Defendants, or people acting at the direction of or under the control of Defendants, without the permission or consent of Plaintiff, and without authority, created the GameMill Game, which includes music that is substantially similar to the Guaraldi Compositions.

94.     The GameMill Game released by Defendants contains music that is one or more unauthorized derivative works of one or more of the Guaraldi Compositions, violating Plaintiff's exclusive right to make derivative works under the Copyright Act.

95.     Defendants, without authorization, license, or consent from Plaintiff, copied original, protectable elements of the Guaraldi Compositions in the creation of the GameMill Game.

96.     The GameMill Game is substantially similar to the protectable expression contained in the Guaraldi Compositions, such that an ordinary observer, unless set out to detect disparities, would regard the aesthetic appeal and total concept and feel of the GameMill Game as substantially similar to that of the Guaraldi Compositions.

97.     Alternatively, and/or in addition, the GameMill Game is substantially similar to the Guaraldi Compositions under a more discerning ordinary observer analysis, to the extent the Guaraldi Compositions contain both protectable and unprotectable elements.

98.     Alternatively, and/or in addition, the GameMill Game contains fragmented literal

18

similarity to the Guaraldi Compositions, including verbatim and near-verbatim copying of discrete, original expressive elements, which Defendants have appropriated in a qualitatively significant manner.

99. The similarities between the GameMill Game and the Guaraldi Compositions are numerous, material, and probative of copying, and extend beyond unprotectable ideas, scènes à faire, stock elements, or elements in the public domain.

100. Defendants' copying includes, among other things, the appropriation of protectable expression in the selection, coordination, arrangement, structure, and/or expressive elements of the Guaraldi Compositions, resulting in one or more works that are substantially similar to Plaintiff's original expression.

101. Defendants' conduct constitutes infringement of Plaintiff's exclusive rights under the Copyright Act, pursuant to 17 U.S.C. § 501, including but not limited to: (A) the right to reproduce the Guaraldi Compositions, 17 U.S.C. § 106(3) (the copyright owner has the exclusive right to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending); (B) the right to publicly perform the Guaraldi Compositions, 17 U.S.C. § 106(4) (the copyright owner has the exclusive right to perform and authorize others to perform the copyrighted work publicly); and (C) the right to prepare derivative works of the Guaraldi Compositions, 17 U.S.C. § 106(2) (the copyright owner has the exclusive right to prepare and authorize others to prepare derivative works based on a copyrighted work).

102. Defendants' acts of infringement have been willful, intentional, and purposeful, in disregard of and indifferent to the rights of Plaintiff.

103. As a direct and proximate result of Defendants' willful infringement of Plaintiff's

19

copyrights and exclusive rights under copyright, Plaintiff is entitled to its actual damages plus

Defendants' profits from infringement, as will be proven at trial, pursuant to 17 U.S.C. § 504(b).

104. In the alternative, at Plaintiff's election, Plaintiff is entitled to statutory damages, pursuant to 17 U.S.C. § 504(c), of up to $150,000 per work.

105. Defendants' conduct has caused, is causing, and unless enjoined by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money.

106. Plaintiff has no adequate remedy at law.

107. Pursuant to 28 U.S.C. § 2201, Plaintiff is entitled to declaratory relief as to Plaintiff's rights in the Guaraldi Compositions, and as to Defendants' infringement of Plaintiff's rights in the Guaraldi Compositions through the creation and release of the GameMill Game.

108. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction requiring Defendants to immediately stop infringing the Guaraldi Compositions.

109. Upon entry of an order granting the sought-after Declaratory Judgment, Plaintiff requests the Court order Defendants to pay attorney's fees pursuant to 17 U.S.C. ¶ 505, and expenses incurred by Plaintiff in connection with this action.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(Contributory Copyright Infringement)**

110. Plaintiff repeats, realleges and incorporates herein by reference each and every allegation contained above as though the same were set forth herein.

111. Plaintiff is the owner of each of the Guaraldi Compositions.

112. Plaintiff holds federal copyright registrations for each of the Guaraldi Compositions.

113. Defendants, or people acting at the direction or under the control of Defendants,

20

conceded that they had access to the Guaraldi Compositions, which have enjoyed longstanding dissemination and fame throughout the world for more than 60 years.

114. It is incontrovertible, in fact, that Defendants were well aware of the Guaraldi Compositions and purposefully created music that was musicologically similar to the Compositions precisely because of the longstanding association in the mind of the public between those Compositions and the *Peanuts* characters.

115. Defendants, or people acting at the direction of or under the control of Defendants, without the permission or consent of Plaintiff, and without authority, created the GameMill Game, which includes music that is substantially similar to the Guaraldi Compositions.

116. The GameMill Game released by Defendants contains music that is one or more unauthorized derivative works of one or more of the Guaraldi Compositions, violating Plaintiff's exclusive right to make derivative works under the Copyright Act.

117. When players play the GameMill Game in the manner designed and intended by Defendants, the game publicly performs the game's music as a matter of Copyright law, and that public performance constitutes a violation of one or more of Plaintiff's exclusive rights in the copyrighted Guaraldi Compositions.

118. Defendants, without authorization, license, or consent from Plaintiff, copied original, protectable elements of the Guaraldi Compositions in the creation of the GameMill Game.

119. The GameMill Game is substantially similar to the protectable expression contained in the Guaraldi Compositions, such that an ordinary observer, unless set out to detect disparities, would regard the aesthetic appeal and total concept and feel of the GameMill Game

21

as substantially similar to that of the Guaraldi Compositions.

120. Alternatively, and/or in addition, the GameMill Game is substantially similar to the Guaraldi Compositions under a more discerning ordinary observer analysis, to the extent the Guaraldi Compositions contain both protectable and unprotectable elements.

121. Alternatively, and/or in addition, the GameMill Game contains fragmented literal similarity to the Guaraldi Compositions, including verbatim and near-verbatim copying of discrete, original expressive elements, which Defendants have appropriated in a qualitatively significant manner.

122. The similarities between the GameMill Game and the Guaraldi Compositions are numerous, material, and probative of copying, and extend beyond unprotectable ideas, scènes à faire, stock elements, or elements in the public domain.

123. Defendants' copying includes, among other things, the appropriation of protectable expression in the selection, coordination, arrangement, structure, and/or expressive elements of the Guaraldi Compositions, resulting in a work that is substantially similar to Plaintiff's original expression.

124. The performance of the music arising from players' playing of the GameMill Game in the manner designed and intended by Defendants constitutes infringement of Plaintiff's exclusive rights under the Copyright Act, pursuant to 17 U.S.C. § 501, including but not limited to: (A) the right to reproduce the Guaraldi Compositions, 17 U.S.C. § 106(3) (the copyright owner has the exclusive right to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending); (B) the right to publicly perform the Guaraldi Compositions, 17 U.S.C. § 106(4) (the copyright owner has the exclusive right to perform and authorize others to perform the copyrighted work publicly); and

(C) the right to prepare derivative works of the Guaraldi Compositions, 17 U.S.C. § 106(2) (the copyright owner has the exclusive right to prepare and authorize others to prepare derivative works based on a copyrighted work).

125.    Defendants contributed to the above-described copyright infringement by specifically and purposefully creating the substantially similar music for the GameMill Game, and designing the GameMill Game to play the music when players play the game, including but not limited to structuring the entire GameMill Game around an effort to complete certain tasks and challenges, to be rewarded with the playing of the substantially similar "Success" musical cues.

126.    At the time that Defendants took the foregoing actions, Defendants had actual knowledge that it did not own the rights to the Compositions, actual knowledge that it had created music intended to mimic and copy the Compositions, actual knowledge that players would trigger public performance of the infringing music when they played the game, and actual knowledge that when the players did so, it would constitute copyright infringement.

127.    Defendants intended that copyright infringement would occur, as reflected in Defendants' purposeful design of the GameMill Game to play the copyright-infringing music in the manner described herein, as well as in the December 19, 2025 writing from Mr. Koehler of GameMill discussed above.

128.    Defendants intended that copyright infringement would occur, as reflected in Defendants' purposeful inducement of players of the GameMill Game to trigger the public performance of the copyright-infringing music as they played the game.

129.    The acts of contributory infringement of Defendants have been willful, intentional, and purposeful, in disregard of and indifferent to the rights of Plaintiff.

23

130.    As a direct and proximate result of the willful contributory infringement by Defendants, Plaintiff is entitled to its actual damages plus Defendants' profits from infringement, as will be proven at trial, pursuant to 17 U.S.C. § 504(b).

131.    In the alternative, at Plaintiff's election, Plaintiff is entitled to statutory damages, pursuant to 17 U.S.C. § 504(c), of up to $150,000 per work.

132.    The conduct of Defendants has caused, is causing, and unless enjoined by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money.

133.    Plaintiff has no adequate remedy at law.

134.    Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction requiring Defendants to immediately stop engaging in contributory infringement of the Compositions.

**AS AND FOR A THIRD CAUSE OF ACTION**
**(Vicarious Copyright Infringement)**

135.    Plaintiff repeats, realleges and incorporates herein by reference each and every allegation contained above as though the same were set forth herein.

136.    Plaintiff is the owner of each of the Guaraldi Compositions.

137.    Plaintiff holds federal copyright registrations for each of the Guaraldi Compositions.

138.    Defendants, or people acting at the direction or under the control of Defendants, conceded that they had access to the Guaraldi Compositions, which have enjoyed longstanding dissemination and fame throughout the world for more than 60 years.

139.    It is incontrovertible, in fact, that Defendants were well aware of the Guaraldi Compositions and purposefully created music that was musicologically similar to the

Compositions precisely because of the longstanding association in the mind of the public between those Compositions and the *Peanuts* characters.

140. Defendants, or people acting at the direction of or under the control of Defendants, without the permission or consent of Plaintiff, and without authority, created the GameMill Game, which includes music that is substantially similar to the Guaraldi Compositions.

141. The GameMill Game released by Defendants contains music that is an unauthorized derivative work of one or more of the Guaraldi Compositions, violating Plaintiff's exclusive right to make derivative works under the Copyright Act.

142. When players play the GameMill Game in the manner designed and intended by Defendants, the game publicly performs the game's music as a matter of Copyright law, and that public performance constitutes a violation of one or more of Plaintiff's exclusive rights in the copyrighted Guaraldi Compositions.

143. Defendants, without authorization, license, or consent from Plaintiff, copied original, protectable elements of the Guaraldi Compositions in the creation of the GameMill Game.

144. The GameMill Game is substantially similar to the protectable expression contained in the Guaraldi Compositions, such that an ordinary observer, unless set out to detect disparities, would regard the aesthetic appeal and total concept and feel of the GameMill Game as substantially similar to that of the Guaraldi Compositions.

145. Alternatively, and/or in addition, the GameMill Game is substantially similar to the Guaraldi Compositions under a more discerning ordinary observer analysis, to the extent the Guaraldi Compositions contain both protectable and unprotectable elements.

146. Alternatively, and/or in addition, the GameMill Game contains fragmented literal similarity to the Guaraldi Compositions, including verbatim and near-verbatim copying of discrete, original expressive elements, which Defendants have appropriated in a qualitatively significant manner.

147. The similarities between the GameMill Game and the Guaraldi Compositions are numerous, material, and probative of copying, and extend beyond unprotectable ideas, scènes à faire, stock elements, or elements in the public domain.

148. Defendants' copying includes, among other things, the appropriation of protectable expression in the selection, coordination, arrangement, structure, and/or expressive elements of the Guaraldi Compositions, resulting in a work that is substantially similar to Plaintiff's original expression.

149. The performance of the music arising from players' playing of the GameMill Game in the manner designed and intended by Defendants constitutes infringement of Plaintiff's exclusive rights under the Copyright Act, pursuant to 17 U.S.C. § 501, including but not limited to: (A) the right to reproduce the Guaraldi Compositions, 17 U.S.C. § 106(3) (the copyright owner has the exclusive right to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending); (B) the right to publicly perform the Guaraldi Compositions, 17 U.S.C. § 106(4) (the copyright owner has the exclusive right to perform and authorize others to perform the copyrighted work publicly); and (C) the right to prepare derivative works of the Guaraldi Compositions, 17 U.S.C. § 106(2) (the copyright owner has the exclusive right to prepare and authorize others to prepare derivative works based on a copyrighted work).

150. Defendants had and have the right and ability to control the public performance of

the copyright-infringing music in the GameMill Game because Defendants specifically and purposefully created the substantially similar music for the GameMill Game, and specifically and purposefully designed the GameMill Game to play the music when players play the game, including but not limited to structuring the entire GameMill Game around an effort to complete certain tasks and challenges, to be rewarded with the playing of the substantially similar "Success" musical cues.

151.    Had Defendants wished, they had and have the right and ability to change the GameMill Game so that it would not publicly perform copyright-infringing music when players play the game.

152.    Upon information and belief, Defendants still have the power to alter the GameMill Game, at least on those gaming platforms that maintain a persistent connection to the Internet.

153.    Defendants had and continue to have a direct financial benefit in the public performance of the copyright-infringing music when players play the GameMill Game, as the game is sold at prices ranging from $39.99 to $49.99, and, upon information and belief, the GameMill Game offers or could be made to offer in-game purchases.

154.    The acts of vicarious infringement of Defendants have been willful, intentional, and purposeful, in disregard of and indifferent to the rights of Plaintiff.

155.    As a direct and proximate result of the willful vicarious infringement by Defendants, Plaintiff is entitled to its actual damages plus Defendants' profits from infringement, as will be proven at trial, pursuant to 17 U.S.C. § 504(b).

156.    In the alternative, at Plaintiff's election, Plaintiff is entitled to statutory damages, pursuant to 17 U.S.C. § 504(c), of up to $150,000 per work.

157.    The conduct of Defendants has caused, is causing, and unless enjoined by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money.

158.    Plaintiff has no adequate remedy at law.

159.    Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction requiring Defendants to immediately stop engaging in vicarious infringement of the Compositions.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Lee Mendelson Film Productions, Inc. prays for judgment against Defendant Madcow, LLC d/b/a GameMill Entertainment as follows:

1.  Damages to Plaintiff for the willful direct, contributory and vicarious copyright infringement of Plaintiff's copyright in the Guaraldi Compositions by Defendants in an amount to be determined at trial, but which is currently estimated to exceed $300,000;

2.  For preliminary and permanent injunctive relief enjoining and restraining Defendants, and anyone acting at their direction or under their control, from further exploitation or infringement of any of the Guaraldi Compositions, and from further engaging in contributory or vicarious infringement of the Guaraldi Compositions;

3.  For pre- and post-judgment interest according to law;

4.  For reimbursement of Plaintiff's expenses, including attorney's fees, incurred in connection with the enforcement of its rights; and

5.  For such other and further relief as the Court may deem just and proper.

28

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

Dated: New York, New York
       May 20, 2026

PARNESS LAW FIRM, PLLC

By:  /s/ Hillel I. Parness
Hillel I. Parness (HP-1638)
136 Madison Ave., 6th Floor
New York, New York  10016
(212) 447-5299
hip@hiplaw.com

LAW OFFICES OF MARC JACOBSON, PLLC

By:  /s/ Marc Jacobson
Marc Jacobson (MJ-5193)
440 East 79th St., 11th Floor
New York, New York  10075
(516) 459-0436
marc@marcjacobson.com

*Attorneys for Plaintiff Lee Mendelson Film
  Productions, Inc.*