UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LEE MENDELSON FILM PRODUCTIONS, INC.,

Plaintiff,

-against-

MADCOW, LLC D/B/A GAMEMILL ENTERTAINMENT, et al.,

Defendants.

Case No.: 1:26-cv-04192-DLC

**DEFENDANT GAMEMILL ENTERTAINMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS COUNTS II AND III OF THE AMENDED COMPLAINT**

FRANKFURT KURNIT KLEIN & SELZ, P.C.

Caren Decter
Joshua M. Goldman
28 Liberty Street
New York, New York 10005
(212) 980-0120
cdecter@fkks.com
jmgoldman@fkks.com

Jeremy S. Goldman
2029 Century Park East
Los Angeles, CA 90067
(310) 579 9600
jgoldman@fkks.com

*Attorneys for MadCow LLC d/b/a GameMill Entertainment*

Defendant Madcow, LLC d/b/a GameMill Entertainment ("GameMill") hereby moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Counts II and III of the Amended Complaint, ECF No. 29 ("Am. Compl.").

**PRELIMINARY STATEMENT**

Plaintiff Lee Mendelson Film Productions, Inc. ("LMFP") has sued GameMill over the music in GameMill's video game *Snoopy and the Great Mystery Club* (the "Game"), asserting claims for both direct and secondary copyright infringement. LMFP alleges it owns exclusive rights to two compositions associated with *Peanuts* (the "Compositions") and that the music in the Game is substantially similar to them. GameMill denies that any music in the Game infringes the Compositions, but this motion presents a narrower issue: LMFP's secondary infringement claims fail as a matter of law and should be dismissed.

Secondary copyright liability—whether contributory (as in Count II) or vicarious (as in Count III) —requires an underlying act of direct infringement by a third party. In its original complaint, LMFP alleged that this predicate was supplied by the player: that a player "publicly performs" the Game's music simply by playing a lawfully purchased video game. GameMill moved to dismiss on the ground that ordinary gameplay does not constitute a public performance. Rather than defend that theory, LMFP amended.

The Amended Complaint does not fix the problem; it simply trades one meritless theory for another. LMFP now alleges, "upon information and belief," that "when the Game is played . . . ***the Game*** makes copies of the Game's music." Am. Compl. ¶¶ 106, 133, 163 (emphasis added). But that allegation still fails to plead the predicate direct infringement necessary for secondary liability. The only actor identified is "the Game," which is software, not a third party capable of copyright infringement. Moreover, LMFP pleads no facts explaining the supposed reproduction: it does not identify what copy is made, where or how it is made, how long it exists, or who

causes it to be made. After two attempts, LMFP still has not identified a third-party infringer or plausibly alleged an act of direct infringement. That is fatal to the secondary liability claims.

Additionally, the secondary liability claims independently fail on their own elements. Contributory infringement requires that the defendant intend for others to use its product or service to infringe. The Amended Complaint alleges no such intent by GameMill; at most, it alleges automatic operation of the Game during ordinary gameplay. Vicarious infringement requires the right and ability to supervise the infringement and a direct financial benefit from it. LMFP alleges only that GameMill can modify its own Game and earns revenue from selling it—not that GameMill supervises any third-party infringer or derives any financial benefit tied to third-party infringement.

For these reasons, Counts II and III should be dismissed.

## FACTUAL BACKGROUND

The Amended Complaint alleges that LMFP owns the copyrights in two Vince Guaraldi songs associated with *Peanuts* television specials: "Linus and Lucy" and "Skating." Am. Compl. ¶¶ 2, 34–35. In 2025, GameMill released *Snoopy and the Great Mystery Club*, a video game featuring *Peanuts* characters, for PlayStation 5, Xbox, Nintendo Switch, and PC. *Id.* ¶¶ 37–38. LMFP does not own rights in the *Peanuts* characters, but GameMill has licensed those rights from Peanuts Worldwide LLC, which is not a party to this action. *Id.* ¶¶ 36, 42.

In Count I, LMFP alleges that the music for the Game is substantially similar to the Compositions. *Id.* ¶¶ 96–122.[1] Counts II and III rest on a theory of secondary liability. For the predicate act of direct infringement, LMFP alleges that, "upon information and belief, when the Game is played . . . the Game makes copies of the Game's music." *Id.* ¶¶ 106, 133, 163. The

[1] GameMill does not move to dismiss Count I.

Amended Complaint does not allege that any person makes a copy. Nor does it say what copy is made, in what medium, or for how long the copy exists. As set forth below, these failures are fatal to LMFP's claims for contributory and vicarious infringement.

## PROCEDURAL HISTORY

LMFP filed its original complaint on May 20, 2026. ECF No. 1. On July 31, 2026, GameMill moved to dismiss the secondary liability claims (Counts II and III) of the original complaint, arguing that the only third-party conduct alleged—players playing the Game—was not a public performance and therefore not an act of direct infringement. ECF No. 25-26. The Court set a deadline of August 21, 2026 for LMFP to oppose the motion or file an amended complaint, and advised that "[i]t is unlikely that plaintiff will have a further opportunity to amend." ECF No. 28. Rather than oppose, LMFP filed its Amended Complaint on August 21, 2026. ECF No. 29. The Court then denied GameMill's prior motion as moot in light of the amendment. ECF No. 36.

## LEGAL STANDARD

On a motion to dismiss, the Court accepts all allegations in the Amended Complaint as true and draws all reasonable inferences in Plaintiff's favor. *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). But the Amended Complaint still must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory allegations that lack a factual basis get no weight. *Hayden v. Paterson*, 594 F.3d 150, 160–61 (2d Cir. 2010). The Amended Complaint "must at minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (cleaned up).

## ARGUMENT

### I. The Amended Complaint Fails to Allege Direct Infringement by a Third Party

Secondary copyright infringement requires an underlying act of direct infringement by a third party. *See Spinelli v. Nat'l Football League*, 903 F.3d 185, 197 (2d Cir. 2018); *Arista Recs. LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 149 (S.D.N.Y. 2009) ("For . . . secondary copyright infringement, there must be the direct infringement of a third party."). The Amended Complaint does not plausibly allege either a third party or an act of direct infringement.

***First***, it does not identify any third party who allegedly infringed LMFP's copyrights. Its repeated allegation is that, "upon information and belief, when the Game is played. . . ***the Game*** makes copies of the Game's music." Am. Compl. ¶¶ 106, 133, 163 (emphasis added). But "the Game" is software, not a person or entity capable of committing copyright infringement. 17 U.S.C. § 501(a) ("Any***one*** who violates any of the exclusive rights of the copyright owner . . . is an ***infringer*** of the copyright. . . .") (emphasis added). The Amended Complaint does not allege that a player, platform, distributor, or any other third party makes the supposed copy.

***Second***, LMFP's allegation that "the Game makes copies" is itself entirely conclusory. LMFP does not allege what copy is made, where it is made, how it is made, how long it exists, who causes or controls its creation, or any other facts explaining the supposed reproduction. Simply invoking the reproduction right without pleading supporting facts does not state a plausible claim of infringement. *See Iqbal*, 556 U.S. at 678 (a "threadbare recital[]" of an element, "supported by mere conclusory statements," is insufficient); *Matthew Bender & Co. v. W. Pub. Co.*, 158 F.3d 693, 706 (2d Cir. 1998) (reproduction theory insufficient where the complaint merely "hypothesized" infringement); *Lopez v. Bonanza.com, Inc.*, 2019 WL 5199431, at *22–23 (S.D.N.Y. Sept. 30, 2019) (dismissing direct-infringement claim on the pleadings where the complaint alleged only that the defendant "copied [and] reproduced" the

work, because such allegations "amount to nothing more than legal conclusions").

That pleading defect is especially significant here because LMFP amended its complaint in response to GameMill's prior motion challenging the absence of any viable predicate infringement. Its original theory was that players "publicly perform" the music merely by playing the Game. Rather than defend that theory, LMFP replaced it with the unexplained assertion that "the Game makes copies." Am. Compl. ¶¶ 106, 133, 163. That assertion still does not identify a direct infringer or plead facts showing an act of direct infringement.

Because the Amended Complaint does not plausibly allege direct infringement by any third party, Counts II and III should be dismissed.

## II. The Amended Complaint Independently Fails to Plead Contributory Liability

Count II independently fails because the Amended Complaint does not satisfy the additional requirements for contributory liability.

A defendant is contributorily liable for another's infringement only if it "intended that the . . . service be used for infringement." *Cox Commc'ns, Inc. v. Sony Music Ent.*, 146 S. Ct. 959, 967 (2026). That intent can be established only by showing that the defendant either "induced the infringement" or provided a product or service "tailored to that infringement." *Id.* Mere knowledge that a product or service will be used for infringement is insufficient. *Id.* at 968–69.

The Amended Complaint does not allege the requisite intent. It does not allege that GameMill induced any third party to engage in copyright infringement, or that the Game was designed to infringe. Instead, LMFP alleges only that, "when the Game is played," "the Game makes copies of the Game's music." Am. Compl. ¶¶ 106, 133, 163. At most, LMFP alleges an automatic operation of the Game during ordinary gameplay, not conduct by GameMill directed toward causing a player or any other person to infringe.

LMFP's allegation that GameMill knew "that playing the Game would trigger the making

of additional copies," *id.* ¶ 143, does not cure that deficiency. Even accepting that conclusory allegation, *Cox* makes clear that knowledge that infringement will occur is not enough. 146 S. Ct. at 968–69. Contributory liability requires intent that another use the defendant's product or service for infringement, manifested through inducement or a product tailored to infringement. *Id.* at 967-68. The Amended Complaint alleges neither.

Count II should therefore be dismissed.

### III. The Amended Complaint Independently Fails to Plead Vicarious Liability

Count III likewise fails because the Amended Complaint does not satisfy the additional requirements for vicarious liability.

***First***, the Amended Complaint does not plausibly allege that GameMill had the right and ability to supervise the alleged infringing conduct, which is an element of a claim for vicarious liability. *See EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 99 (2d Cir. 2016). LMFP alleges only that GameMill holds "the power to alter the Game . . . at least on those gaming platforms that maintain a persistent connection to the Internet." Am. Compl. ¶ 174. But the ability to modify one's own software is not the right and ability to supervise the conduct of a third-party infringer. The Amended Complaint identifies no person whose allegedly infringing conduct GameMill can monitor, direct, prevent, or otherwise supervise.

***Second***, the Amended Complaint does not plausibly allege the second element of a vicarious liability claim: a direct financial benefit from the third-party infringement. *See EMI Christian Music Grp.*, 844 F.3d at 99. LMFP alleges that the Game retails for $39.99 to $49.99 and offers or could be made to offer "in-game purchases." Am. Compl. ¶¶ 38–39, 175. Those allegations establish only that GameMill earns revenue from selling the Game. They do not allege that the supposed copying is a draw for customers, that anyone purchases or plays the Game because of that copying, or that GameMill receives any additional revenue when such

copying supposedly occurs. *See EMI Christian Music Grp.*, 844 F.3d at 99 ("[I]nfringing material acts as a 'draw' to attract subscribers to a defendant's business, even if it is not the primary, or even a significant draw."); *White v. DistroKid*, 738 F. Supp. 3d 387, 402 (S.D.N.Y. 2024) (dismissing vicarious liability claim where "amended complaint provide[d] no facts showing that" platform users were "'drawn' to its platform in order to engage in or profit from copyright infringement"). Revenue from the Game itself is not, without more, a direct financial benefit from some unidentified third party's alleged infringement.

Count III should therefore be dismissed.

## CONCLUSION

For these reasons, GameMill respectfully requests that the Court dismiss Counts II and III of the Amended Complaint.

DATED: September 11, 2026

FRANKFURT KURNIT KLEIN + SELZ PC

By: */s/ Jeremy S. Goldman*
Jeremy S. Goldman
2029 Century Park East
Los Angeles, CA 90067
(310) 579 9600
jgoldman@fkks.com

Caren Decter
Joshua M. Goldman
28 Liberty Street
New York, New York 10005
(212) 980-0120
cdecter@fkks.com
jmgoldman@fkks.com

*Attorneys for MadCow LLC d/b/a GameMill Entertainment*

**CERTIFICATION OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York: The foregoing Memorandum of Law in Support of GameMill Entertainment's Partial Motion to Dismiss Counts II and III of the Amended Complaint was prepared on a computer using the Microsoft Word program.

Relying on that program's word-count function, the number of words in the foregoing document, excluding caption, any index, table of contents, table of authorities, signature blocks, and this certificate is 2,051.

Dated: September 11, 2026

/s/ *Jeremy S. Goldman*_______
Jeremy S. Goldman